WOLLMUTH MAHER & DEUTSCH LLP
500 FIFTH AVENUE
NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300

July 7, 2022

Honorable Paul G. Gardephe
United States District Court for the SDNY
40 Foley Square
New York, New York 10007

Re: *Wilson & Wilson Holdings LLC, v. DTH, LLC*, 1:22-cv-02941-PGG

Dear Judge Gardephe:

We represent Defendant DTH, LLC in the above-referenced matter and write in accordance with Rule IV.A of Your Honor's Individual Rules of Practice to request a pre-motion conference and permission to file a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). We conferred with Plaintiff's counsel and Plaintiff does not consent to the relief sought in Defendant's motion.

As set forth in more detail below, the Complaint does not state a claim because it does not plausibly allege that DTH failed to deliver a product that was operational as of the closing date of the transaction at issue, *i.e.,* the sale of a software platform. This is a case of buyer's remorse. Plaintiff concedes it bought a business that was successful and profitable on the closing date. Plaintiff is attempting to shift its losses suffered as a result of its apparent inability to implement its business plan to DTH, but DTH did not assume the risk that Plaintiff would be unable to successfully run the business.

I. **Background**

On October 22, 2020, DTH and Plaintiff entered into a Technology Assets Purchase Agreement ("APA") pursuant to which DTH sold a software platform called "Investor Intelligence" to Plaintiff in exchange for an upfront cash payment of $300,000 and an additional $200,000 to be paid monthly based on a portion of gross revenues specified in the APA. ECF 1 ¶ 19; ECF 1-1. The additional $200,000 was never paid.

The Investor Intelligence software allowed parties to query a database of venture capital investors. The Complaint concedes that "[a]t the time of the parties' negotiations and due diligence period for the sale and purchase of Investor Intelligence, Investor Intelligence was operating as a successful platform and was generating between $10,000-$30,000 per month in revenue." ECF 1 at p. 1. Indeed, Section 4 of the APA, entitled "DUE DILIGENCE" provides:

> Buyer has had an opportunity to conduct due diligence on the Assigned Properties and Assigned Rights and any and all properties being purchased hereunder (collectively, the "Purchased Assets"). ***Buyer has completed such due diligence on the Purchased Assets, has received all necessary information from Seller, and is satisfied with the condition of the Purchased Assets.*** Buyer acknowledges that it has inspected the Purchased Assets and, except for the representations and warranties set forth herein, accepts same "AS IS".

ECF 1-1 (emphasis added).

The parties also entered into a Transition Services Agreement ("TSA") pursuant to which DTH would perform support services to assist with the transition of the software platform to Plaintiff in exchange for specified servicing fees. ECF 1-3. Plaintiff never paid DTH any of the contractually required fees under the TSA.

## II. The Complaint does not plausibly allege that Defendant breached representations and warranties provided in the APA

Plaintiff's core claim is that DTH breached representations and warranties concerning the operability of the software platform that was transferred. *See e.g.,* ECF 1 ¶ 26, 79. But the relevant representation and warranties were expressly limited to the facts as they existed "as of the Effective Date" or October 22, 2020. *Id.* ¶ 26. The Complaint does not contain any facts plausibly alleging that the software was not operable as of October 22, 2020. In fact, the complaint alleges otherwise as it expressly states when the parties negotiated the APA "Investor Intelligence was operating as a successful platform." ECF 1 at p. 1.

The Complaint relies heavily on email communications, summarized in the body of the Complaint and attached as exhibits, that purportedly document relatively minor problems with the software platform. The first such email is dated January 21, 2021, approximately *three months after the Effective Date*. ECF 1 ¶ 43. The January 21 email contains a list of critiques from Plaintiff's representative concerning specific features of the platform and problems that arose when Plaintiff attempted to make modifications to the software platform after the Effective Date. *See* ECF 1-1 ("something new happened. I'm continuously locked out when I try to access campaigns"); *id.* ("My investor CRM Kanban board still looks funky"); *id.* ("Still don't have an 'unsave' button on saved investors"); *id.* ("When viewing an investor, I thought this was supposed to pop up in a panel and not load a new page."); *id.* ("Enron still exists in the database."); *id.* ("Is there a way to query 'LP investors'? I thought there was a drop down previously, but there isn't one now."); *id.* ("Within 'Country' is there any way to consolidate 'United States' and 'United States of America' so users don't need to select both?").

Nothing in the email referenced by Plaintiff suggests that the software was inoperable on October 22, 2020. In fact, it demonstrates that Plaintiff had possession of the software and was able to query the database of investors.[1] At worst, the email suggests that Plaintiff became

---

[1] The Complaint alleges in a wholly conclusory manner that DTH failed to deliver items that it committed to deliver. ECF 1 ¶ 39. However, pursuant to Section 2.4 of the APA, DTH

2

dissatisfied with certain ancillary features after the effective date as Plaintiff implemented and tinkered with the product. The Complaint confirms that Plaintiff was permitted to conduct pre-purchase due diligence and that Plaintiff was "satisfied with the condition of the Purchased Assets" on the effective date. ECF 1-1 §4; *see also* ECF 1 at p. 1. DTH did not assume any obligation to indemnify Plaintiff for any issues arising after the Effective Date, particularly those resulting from Plaintiff's inability to modify the product after the Effective Date.

### III. Plaintiff's other claims fail as a matter of law

Perhaps recognizing the futility of its claims for breach of the APA and related representations and warranties, the Complaint cobbles together a laundry list of causes of action based on distinct legal theories. None of these alternative theories can withstand a motion to dismiss. In sum:

- ***Restrictive covenant.*** Plaintiff asserts that DTH breached a covenant not to compete. The relevant provision provides that DTH "shall not, directly or indirectly, own, operate, manage, or control any business that competes (a 'Competing Business') with [Plaintiff] or its affiliates by assisting such Competing Business in building and/or creating a software application tool designed to connect sources of equity capital for equity capital financing projects with those parties seeking capital for a business or investment product." ECF 1-2 § 2(a)(i). The Complaint does not allege a single fact suggesting that DTH owned, operated, managed or controlled a Company that competed with Plaintiff. The Complaint contains only references to marketing materials for two entirely distinct companies that purport to help startups raise capital. ¶ 59, 64. The Complaint contains no factual allegations, aside from wholly conclusory allegations, that these companies offered a product similar to Investor Intelligence. Plaintiff has further failed to allege any links between DTH and these two companies other than the fact that one of them was founded by DTH's officers. ¶ 59. The covenant, however, applies to DTH, not its officers. "New York courts narrowly construe non-compete provisions" and, thus, only a named party can breach a restrictive covenant. *Goodman Mfg. Co. L.P. v. Raytheon Co.*, 98 Civ. 2774 (LAP), 1999 U.S. Dist. LEXIS 13418, at *22 (S.D.N.Y. Aug. 30, 1999) (conduct by affiliates insufficient because they were not parties to the agreement).

- ***Breach of the TSA.*** The Complaint asserts a claim for a breach of the TSA, but the Complaint does not contain a single factual allegation suggesting the DTH failed to provide services required under the TSA. *See* ECF 1 Count IV. In addition, Plaintiff does not allege in the relevant count that it met its obligations under the TSA, which is telling because Plaintiff made such an allegation with respect to its performance under the APA in its count for breach of the APA. *Compare* ECF 1 ¶ 85 *to* Count IV. The materials

---

committed to deliver only the "Assigned Properties." The only item listed in paragraph 39 of the Complaint that arguably fall within the definition of Assigned Properties are the "copies of Databases." The complaint does not plausibly allege that these were not delivered as the attachments to the complaint contain references to the fact that Plaintiff had copies of the database and was seeking to change the way they were queried.

attached to the Complaint confirm that Plaintiff did not perform its obligations under the TSA because it did not pay the required service fees. ECF 1-5 ("we do not agree to pay a service fee"). Having failed to perform, Plaintiff cannot assert a claim for breach of the TSA. *See Collar City Pshp. I v. Redemption Church of Christ of the Apostolic Faith,* 235 A.D.2d 665, 666 (3d Dep't 1997) (party in default may not recover for breach); *Paterno & Sons, Inc. v. New Windsor*, 43 A.D.2d 863, 864 (2d Dep't 1974) (party's failure to make payments terminates the obligation of the other party) (citing *Anderson v. Hayes Constr. Co.*, 243 N. Y. 140, 149-150 (1926)). In any event, DTH's liability under the TSA is capped at payments it received from Plaintiff, *i.e.,* zero dollars. ECF 1-3 § 6(a).

- *N.Y. Gen. Bus. Law. § 349.* Plaintiff's claim under Section 349 of New York General Business Law fails for a multitude of reasons, including, but not limited to, Plaintiff's failure to allege that Defendant was engaged in any consumer-oriented conduct and that it acted in a deceptive or misleading manner. *See, e.g., Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169, 177 (2021) ("the consumer-oriented element precludes a GBL § 349 claim based on '[p]rivate contract disputes, unique to the parties'").

- *Negligent misrepresentation.* Plaintiff's negligent misrepresentation claim fails because the Complaint does not allege the existence of a "special relationship" necessary to prevail on a claim. Plaintiff has also failed to allege any misrepresentation and, even if it had, the claim would be duplicative of the breach of contract claim and must be dismissed.

- *Good faith.* Plaintiff's breach of the covenant of good faith claim fails because the Complaint does not allege the Defendant acted in bad faith and because it is duplicative of Plaintiff's breach of contract claim.[2]

*   *   *

For the foregoing reasons, DTH requests permission to file a motion to dismiss this action.

Respectfully submitted,

*/s/ Steven S. Fitzgerald*
*Counsel for DTH, LLC*

cc: Counsel of Record via ECF

---

[2] Plaintiff's claim for punitive damages must also be dismissed because they are not available in a breach of contract action such as this one.